52

United States District Court
Southern District of Texas
ENTERED

FEB 14 2000

Michael N. Milby, Clerk of Court
By Deputy Clerk

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**-BROWNSVILLE DIVISION-**

| | | |
|---|---|---|
| NOE BELTRAN, Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. B-95-039 |
| GARY L. JOHNSON, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE INSTITUTIONAL DIVISION, Respondent. | § | |

MAGISTRATE JUDGE'S REPORT & RECOMMENDATION

Pending before this Court is Petitioner's, Noe Beltran ("Mr. Beltran"), Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Docket No. 1). Mr. Beltran filed Proposed Findings of Fact and Conclusion of Law. (Docket No. 21). The Respondent, Gary L. Johnson, ("Mr. Johnson"), then submitted Proposed Findings of Fact and Conclusion of Law Dismissing for Failure to Exhaust State Court Remedies. (Docket No. 25). Mr. Beltran filed a Response to Respondent's Findings of Fact and Conclusions of Law for Dismissing for Failure to Exhaust State Court Remedies. (Docket No. 26). Both Mr. Beltran and Mr. Johnson have submitted Revised Proposed Findings of Fact and Conclusion of Law. (Docket Nos. 49 & 50 respectively).

PROCEDURAL HISTORY

On March 12, 1996, Magistrate Judge Fidencio G. Garza, Jr. conducted an evidentiary hearing. However, a Report and Recommendation was not signed before he retired on September 30, 1998.

On December 7, 1998, United States District Judge Stewart A. Newblatt, acting on

ClibPDF - www.fastio.com

assignment, entered a Memorandum Order (Docket No. 27) granting Mr. Beltran habeas corpus relief. On December 28, 1998, the Court entered a Final Judgment (Docket No. 29), which was filed on January 4, 1999.

On January 15, 1999, Mr. Johnson filed a Motion to Alter or Amend the Judgment Pursuant to Rule 59(e) of the Federal Rules of Civil Procedure with Brief in Support. (Docket No. 30). Mr. Johnson then filed a Motion for Relief From Judgment Pursuant to Rule 60(b) of the Federal Rules of Civil Procedure with Brief in Support (Docket No. 31) on January 19, 1999. On January 22, 1999, the Court granted the Rule 59(e) motion, withdrew its Memorandum Order, and vacated the Final Judgment. (Docket No. 32). Mr. Beltran immediately filed a Motion to Vacate the Order Granting the Respondent's Motion to Alter or Amend the Judgment to Rule 59(e) on February 3, 1999. (Docket No. 35).

The case was referred to Magistrate Judge Felix Recio on November 2, 1999 and a second evidentiary hearing was held on January 11, 2000.

FINDINGS OF FACT

1. On March 4, 1981, about 10:30 a.m., Ruben Plata threatened with a derringer an employee of the Amber Motel in Brownsville. (Habeas R. 32-34; Habeas Exhibit 5).

2. On March 4, 1981 about 2:30 p.m., Enrique and Carmen Arechiga were working in the Disco de Oro Tortilla Factory in Brownsville with their 17 year old son, Valentin Arechiga, and employees Guadalupe Benavides and Maria Ybarra.

3. Valentin Arechiga saw someone drive a sports car past the tortilleria into an alley (Trial R. XII-155).

4. Shortly thereafter, a man entered the tortilleria, pointed a gun at Valentin, and demanded



ClibPDF - www.fastio.com

money. Valentin gave him money from a cash drawer. When Carmen approached and gave him additional money, he shot her and ran outside. Carmen died at the scene (Trial R. XII- 156).

5. Guadalupe Rodriguez, who lived across the street from the tortilleria, heard a noise, looked out of her bedroom window, and saw a man run to red car (Trial R. XIII- 76-79).

6. Valentin Arechiga and Guadalupe Benavides ran outside of the tortilleria an saw the man get in the passenger side of the car, which drove away (Trial R. XII- 165, Trial R. XIII-64).

7. The witnesses described the assailant to the police as a Latin male, 30 to 33 years old, with a tattoo of the initials "LX" or "LT" on his upper left arm and forearm (Trial R. XI- 93-98, 101-02).

8. The witnesses described the weapon to the police as a .38 caliber derringer (Habeas Exhibit 7).

9. Officer Douglas Ward took Valentin Arechiga to look for the car, which they found at an apartment complex (Trial R. XI- 86-87; Trial R. XII- 165-166).

10. Ward searched the car and found Ruben Plata's driver's license (Trial R. XI-107).

11. The police determined that Plata owned the car (Trial R. XI- 156).

12. Plata was not present at the apartment complex (Trial R. XI- 177).

13. Plata became the suspect because he owned the car which left the scene of the murder (Habeas R. 18).

14. The police obtained a photo of Plata for a photo spread (Habeas R. 18-20; State's Trial Exhibit 10).

15. The police showed the photo spread to the witnesses. Valentin Arechiga, Guadalupe Benavides and Maria Ybarra said that Plata looked like the assailant (Habeas R. 21-24).

16. Officer Douglas Ward, with the assistance of Valentin Arechiga, made a composite sketch



ClibPDF - www.fastio.com

of the assailant (Trial R. XI- 93-98, 101-02; Habeas R. 105-109; Habeas Exhibit 7).

17. District Attorney Rey Cantu came to the police station after being advised of the situation (Habeas R. 24).

18. Cantu prepared an affidavit for a warrant to arrest Ruben Plata, and his brother Luis Plata, and to search Ruben's car. The probable cause was Ruben's use of a derringer to commit an aggravated assault at a motel four hours before the murder, the murder weapon being a derringer, three witnesses tentatively identifying Ruben as the murderer, Ruben's car leaving the scene of the murder, and the Plata brothers being seen together in the car 15 minutes after the murder (Habeas R. 24-25, 82-84).

19. Officer Victor Rodriguez swore to the affidavit for a combination arrest and search warrant on March 4, 1981, about 10:30 p.m. (Trial R. XI- 178; Habeas R. 17-18, 28-30; Habeas Exhibit 2).

20. Cantu went with the police to attempt to arrest Plata (Habeas R. 82).

21. Officer Rodriguez prepared a supplemental offense report on March 7 (Habeas Exhibit 3) and made a sworn statement on March 20 (Habeas Exhibit 4), which included that Plata used a derringer to commit an offense at the motel on the morning of March 4, Plata's derringer and car were used in a murder committed four hours later, and three witnesses to the murder tentatively identified Plata as the assailant (Habeas R. 18, 32-35).

22. Rodriguez's supplemental offense report and sworn statement were in the State's file (Habeas R. 35, 77).

23. Cantu considered these documents to be favorable to petitioner, as they demonstrated that someone else could have committed the murder (Habeas R. 85, 90-91).



ClibPDF - www.fastio.com

24. On March 4, 1981, the State's theory was that Ruben Plata committed the murder and Luis Plata drove the getaway car (Habeas R. 36-37).

25. Before anyone was arrested, officers compiled another photo spread to show to the witnesses. Petitioner's photo was identified by Guadalupe Benavides on March 13, 1981 (Trial R. XII - 96-97), by Enrique and Valentin Arechiga on March 14, 1981 (Trial R. XII - 75-79, 85), and by Guadalupe Rodriguez on March 18, 1981 (Trial R. XII -85).

26. The police arrested petitioner on March 14 and placed him in several lineups, in which he was identified by the Arechigas and Benavides (Trial R. XII - 198, 205, 207-09).

27. On April 6, 1981, Plata's mother gave Plata's .38 derringer to Raul Lopez, a district attorney investigator (Trial R. XII-102-03).

28. A firearms examiner determined that Plata's derringer was the murder weapon (Trial R. XII- 190; Habeas R. 32-33, 84).

29. At trial, the State's theory was that petitioner committed the murder and Plata drove the getaway car (Habeas R. 37).

30. The State presented testimony that Valentin Arechiga, Enrique Arechiga and Guadalupe Benavides positively identified petitioner, and Guadalupe Rodriguez tentatively identified him (Habeas R. 88).

31. The State's case against petitioner depended solely on the eyewitnesses identifications; although Plata was connected to the offense by his car and derringer, no physical evidence connected petitioner to the offense (Habeas R. 88-89).

32. Valentin Arechiga testified outside the presence of the jury that the assailant was not in the March 4 photo spread (Habeas R. 99-100).



ClibPDF - www.fastio.com

33. Although Cantu knew that Valentin, after viewing the March 4 photo spread, told the police that Ruben Plata's photo looked like the assailant, Cantu did not correct Valentin's testimony (Habeas R. 100).

34. Valentin Arechiga testified before the jury that petitioner was the assailant, and that he had previously identified petitioner in the only photo spread he saw and in a lineup (Trial R. XII - 159-64; Habeas R. 116-19).

35. Although Cantu knew that Valentin had tentatively identified Plata as the assailant in the March 4 photo spread, he did not correct Valentin's testimony (Habeas R. 120). Neither the State nor the defense elicited Valentin's prior tentative identification of Plata.

36. Guadalupe Benavides testified that petitioner was the assailant, and that he had previously identified petitioner in a photo spread and a lineup (Trial R. XII -66-69).

37. Neither the State nor the defense elicited Benavides' prior tentative identification of Plata as the assailant.

38. Enrique Arechiga testified that petitioner was the assailant, and that he had previously identified petitioner in a photo spread and a lineup (Trial R. XII - 49-54).

39. Enrique initially did not make a positive identification when he viewed petitioner in the lineup.

40. Guadalupe Rodriguez testified that she could tentatively identify the petitioner as the assailant, explaining that she had only seen the man from the side; she could not identify the petitioner from a frontal view (Trial R. XII - 83-85).

41. Cantu did not ask Detective Limas whether any witnesses identified Ruben Plata's photo (Habeas R. 110).



ClibPDF - www.fastio.com

42. Officer Rodriguez testified that the police did not obtain an identification in the March 4 photo spread (Trial R. XI - 126-27; Habeas R. 38, 42, 103).

43. Neither the State nor the defense elicited testimony that the police obtained three tentative identifications of Plata as the assailant in the March 4 photo spread, or that Rodriguez used those tentative identifications to obtain an arrest warrant for Plata (Habeas R. 39, 47, 50, 103).

44. Cantu argued during summation that the witnesses had consistently identified petitioner in the photo spreads and lineups, and the defense could not show any variations in the identifications (Trial R. XIII - 161-62 166; Habeas R. 127-128).

45. A pre-sentence investigation report prepared in 1978 on Ruben Plata in a robbery case in Brownsville described eight different tattoos, including a Nazi cross on his upper left arm (Habeas R. 108).

46. Cantu did not elicit that Plata had a tattoo of a Nazi cross in the same location as the assailant's tattoo as described by the witnesses to the murder (Habeas R. 105-109, 114).

47. Petitioner did not have such a tattoo on his arms (Trial R. XIII -89-90, 98).

48. Defense counsel Mike McNamara and Jim Jackson were aware at the trial of the three tentative identifications of Plata as the assailant. (Habeas R. 198-199).

49. McNamara, as lead counsel, was responsible for all strategic decisions at trial. He did not impeach the witnesses with their prior tentative identification of Plata, primarily because he intended to rely on the fact that petitioner did not have a tattoo which fit the witnesses' description of the assailant's tattoo. (Testimony of McNamara and Jackson at second habeas hearing).

50. Defense counsel was unaware at trial that Ruben and Luis Plata were seen together in the car about 15 minutes after the murder (Habeas R. 156, 202-03).



ClibPDF - www.fastio.com

51. Defense counsel did not investigate whether Ruben Plata had any tattoos, nor discover that he had tattoo of a Nazi cross on his upper left arm (Habeas R. 159-61, 205-206).

52. On April 15, 1987, the Court of Criminal Appeals affirmed petitioner's conviction, but reformed his sentence to life imprisonment.

53. On April 28, 1994, petitioner filed a state habeas corpus application.

## CONCLUSIONS OF LAW

Mr. Beltran argues that he is entitled to a new trial based on the following two reasons: 1. the defense counsel rendered ineffective assistance which resulted in Mr. Beltran's conviction, and 2. the State knowingly used and failed to correct perjured testimony. Each of these issues will be addressed separately.

I. Ineffective Assistance of Counsel

Mr. Beltran argues that the Defense counsel's ("Mr. McNamara") failure to impeach Valentin Arechiga and Guadalupe Benavides with their prior tentative identifications of Plata rendered counsel's assistance to Mr. Beltran ineffective.[1]

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two prong test for deciding ineffective assistance of counsel claims. Under that test, a defendant must

---

[1]Mr. Beltran argued orally at both evidentiary hearings that Mr. McNamara did not conduct a reasonable investigation in his representation of Mr. Beltran because he did not use the evidence of the assailant having a tattoo on his left arm and linking that evidence to Ruben Plata. Mr. Beltran argued that if Mr. McNamara had conducted a reasonable investigation he would have uncovered this evidence and could have used it to help exculpate Mr. Beltran. As compelling as the Court believes this evidence may be, it can not be considered because Mr. Beltran did not brief this issue in either his state habeas petition or his federal habeas petition. Since this issue can not be considered by the Court, Mr. Beltran's petition is not construed to be one of a mixed petition (unexhausted and exhausted claims in the same petition).



ClibPDF - www.fastio.com

show that counsel's performance was deficient, and that the deficient performance prejudiced the defense. *Id.* at 687. In reference to the deficiency aspect, the Court stated that, "...strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable...". *Id.* at 690. It is to be presumed that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690. Because Mr. McNamara knew of these tentative identifications and decided not to use them at Mr. Beltran's trial, this Court must conclude that he made a strategic choice not to use this information at trial. Therefore, Mr. Beltran can not rely on this argument to support his ineffective assistance of counsel claim.

II. Knowingly Presenting False Evidence

In analyzing the merit of this argument, we turn to an analysis of *Giglio v. United States.* 405 U.S. 150 (1972). According to the Supreme Court in *Giglio*, the test of whether a new trial is merited is if the false testimony could have reasonably affected the judgment of the jury. *Id.* at 153. The Supreme Court further stated, "...the same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." *Id.* at 153 (quoting *Napue v. Illinois,* 360 U.S. 264 (1942)). The Court further held that a new trial is justified if there is suppression of material evidence, regardless of the good or bad faith on behalf of the prosecution.[2] *Id.* at 154.

Applying this test to the facts of the case at hand, it is evident that Mr. Beltran has a legitimate

---

[2]The Supreme Court also stated that it is irrelevant if the nondisclosure on behalf of the prosecution occurred due to negligence or intention. *Giglio v. United States*, 405 U.S. 150, 154 (1972).



ClibPDF - www.fastio.com

claim for false presentation of evidence. The state elicited testimony from Valentin Arechiga and Guadalupe Benavides that they consistently identified Mr. Beltran in a photo spread. Mr. Cantu, the District Attorney prosecuting the case, did not elicit the testimony from either of these witnesses that they had previously identified Ruben Plata as the assailant on March 4, 1981. Further, Officer Rodriguez testified that the police did not obtain an identification in the March 4 photo spread, despite the fact that Valentin Arechiga and Guadalupe Benavides tentatively identified Ruben Plata on that day. Moreover, in Mr. Cantu's closing argument, he stated that the witnesses had consistently identified Mr. Beltran in the photo spread and lineups, and the defense could not show any variations in the identifications. Because Mr. Beltran was convicted solely on eyewitness testimony, the presentation of this false evidence could definitely have affected the judgment of the jury. According to the Supreme Court in *Giglio*, the fact that Mr. Cantu did not correct this testimony is just as compelling as if he had intentionally lied to the court. Therefore, Mr. Beltran should receive a new trial because of the state's failure to correct this false testimony.

IT IS THEREFORE RECOMMENDED that Noe Beltran's habeas petition be **GRANTED**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Automobile Association,* 79 F.3d 1415 (5th Cir. 1996).



ClibPDF - www.fastio.com

DONE at Brownsville, Texas, this 11th day of February, 2000.

Felix Recio
United States Magistrate Judge



ClibPDF - www.fastio.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**-BROWNSVILLE DIVISION-**

| | | |
|---|---|---|
| NOE BELTRAN, Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. B-95-039 |
| GARY L. JOHNSON, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE INSTITUTIONAL DIVISION, Respondent. | § | |

## ORDER

Before this Court is Magistrate Judge's Report and Recommendation on the above-referenced cause of action. After a de novo review of the entire file, it is the opinion of this Court that the Magistrate Judge's Report and Recommendation of February 11, 2000 should be ADOPTED and the Petitioner's Petition is GRANTED.

DONE in Brownsville, Texas, on this ________ day of _________________, 2000.

_________________________
Filemon B. Vela
United States District Judge

ClibPDF - www.fastio.com